NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
PHYRA M. McCANDLESS (SBN 260021)
pmccandless@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

FILED
OCT - 4 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

SEALED

*Attorneys for Relator*

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**UNITED STATES OF AMERICA** *ex rel.* **FBH1, LLC;**

Plaintiffs,

v.

**BOSTON HEART DIAGNOSTICS CORPORATION,** a Delaware corporation, and **GORDON C. GUNN, M.D.,** an individual,

Defendants.

CASE NO. 2:17-CV 2061 JAM EFB

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

**DEMAND FOR JURY TRIAL**

File By Fax

**[FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. JURISDICTION AND VENUE .......... 1

III. PARTIES .......... 2

IV. OVERVIEW OF THE SCHEME .......... 2

V. DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY INCENTIVIZING AND BILLING FOR MEDICALLY UNNECESSARY LABORATORY TESTS .......... 5

VI. CAUSES OF ACTION .......... 8

FIRST CAUSE OF ACTION
On Behalf of the United States Federal False Claims Act, Presenting False Claims 31 U.S.C. § 3729(a)(1)(A) .......... 8

SECOND CAUSE OF ACTION
On Behalf of the United States Federal False Claims Act, Making or Using False Records or Statements Material to Payment or Approval of False Claims 31 U.S.C. § 3729(a)(1)(B) .......... 9

THIRD CAUSE OF ACTION
On Behalf of the United States Federal False Claims Act, Conspiring to Violate the False Claims Act 31 U.S.C. § 3729(a)(1)(C) .......... 10

VII. PRAYER FOR RELIEF .......... 11

VIII. DEMAND FOR JURY TRIAL .......... 12

Plaintiff United States of America ("United States"), by and through Relator FBH1, LLC, alleges as follows:

## I. INTRODUCTION

1. Beginning January 1, 2015, Defendant BOSTON HEART DIAGNOSTICS CORPORATION ("Boston Heart") perpetrated a fraud on U.S. taxpayers through a kickback scheme. Defendants induce exclusive lab testing in exchange for free and substantially discounted sessions with Registered Dietitians.

2. Defendants promise patients that they can receive enrollment in Boston Heart's Lifestyle Program and valuable coaching sessions with Registered Dietitians after completing a series of seven lab tests. Healthcare providers, such as Defendant GORDON C. GUNN, M.D. ("Gunn"), are able to attract and retain the business of patients by promising a personalized wellness program and nutritional counseling. In exchange for this benefit, the providers send all of their lipid-related lab testing business, including Medicare business, to Defendant Boston Heart. As such, the valuable wellness program and discounted Registered Dietitian coaching sessions constitutes illegal remuneration. Lipid panels and related tests are among the most frequently ordered—and expensive—lab tests. In engaging in these practices Defendants are encouraging medically unnecessary and excessive testing as well as driving competitors out of the marketplace.

3. This is a *qui tam* action for violation of the Federal False Claims Act (31 U.S.C. §§ 3150 *et seq.*), to recover treble damages, civil penalties, and attorneys' fees and costs for Plaintiffs, and on behalf of the United States for fraudulent Medicare billings. Non-public information personally known to Relator serves as the basis of this action.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the Federal False Claims Act, and authorize nationwide service of

process. Venue is proper in this district pursuant to 31 U.S.C. section 3732(a), as Defendant transacts business in this district.

## III. PARTIES

5. The plaintiff in this action is the UNITED STATES OF AMERICA ("United States"), by and through Relator FBH1, LLC.

6. Relator FBH1, LLC is a limited liability company whose members are involved in the healthcare industry.

7. Defendant BOSTON HEART DIAGNOSTICS CORPORATION is a Delaware corporation with its principal place of business in Massachusetts. Boston Heart is operating the scheme in California.

8. Defendant GORDON C. GUNN, M.D. is an individual with a private medical practice in Fullerton, California.

## IV. OVERVIEW OF THE SCHEME

9. Boston Heart is a medical laboratory that specializes in advanced lipid testing. Advanced lipid testing helps identify cardiovascular disease risk factors that standard cholesterol and other basic blood tests do not. Advanced lipid tests tend to be more expensive than more basic medical laboratory tests and, consequently, can result in higher profit margins for the laboratories that provide them.

10. In January 2015, Boston Heart started its Lifestyle Program. The Boston Heart Lifestyle Program requires a patient to take seven lab tests to be eligible for the Lifestyle Program, which generates a Personalized Nutrition and Life Plan and access to free and substantially discounted to one-on-one coaching sessions with a Registered Dietitian ("RD").

11. The laboratory testing must be done in a certain order and all the tests are required. They also cannot be older than January 1, 2015 and patients will need to be re-tested to determine whether the Lifestyle Program is effective. Moreover, two of the tests are exclusively available from Boston Heart. Therefore, there are

many opportunities for Boston Heart's tests to be ordered by healthcare providers that go beyond medical necessity. The seven lab tests are:

- Boston Heart HDL Map®
- Boston Heart Cholesterol Balance®
- Small Dense LDL Cholesterol (sdLDL-C)
- High Sensitivity C-Reactive Protein (hs-CRP)
- Triglycerides (TG)
- High Density Lipoprotein Cholesterol (HDL-C)
- Direct Low Density Lipoprotein Cholesterol (LDL-C)

12. The Boston Heart Cholesterol Balance® test has the proprietary marker-Lathosterol and, along with the proprietary Boston Heart HDL Map®, it is one of Boston Heart's most expensive lab tests.

13. Because the purpose of advanced lipid testing is generally to detect, prevent, and manage cardiovascular disease, the patient population that requires the testing is largely comprised of senior citizens covered by Medicare although there are also Government funded healthcare programs that pay for testing.

14. According to Boston Heart's website, patients are told:

> The first step to participating in the Lifestyle Program is to receive your Boston Heart Laboratory Report or Lifestyle Program Prescription from your healthcare provider. Next, go to mybostonheart.com and click Activate Account. Enter your Patient ID and last name exactly as they appear on your report and then complete your Account Profile.

Available at: https://www.mybostonheart.com/pub/FAQs.aspx#3; last visited August 9, 2017.

15. Once a patient has taken all seven blood tests and answered a questionnaire, the free Life Plan describing an eating and exercise strategy. From there, a Registered Dietitian from Boston Heart is available for multiple coaching sessions. The first two sessions are complimentary and additional sessions are available for purchase as follows: one session for $18, four sessions for $49, or eight sessions for $90.

16. Boston Heart's coaching sessions are quite valuable given that Medicare Part B insurance only covers Registered Dietitians who provide medical nutrition therapy ("MNT") and related services in three circumstances: (1) a patient with diabetes, (2) kidney disease, and/or (3) has had a kidney transplant in the last 36 months. Moreover, people with Medicare Part B must get a referral from their doctor or qualified non-doctor practitioner for the service, but the patient pays nothing if the provider accepts assignment.

17. MNT through Medicare Part B and private insurance typically includes an initial nutrition and lifestyle assessment, one-on-one nutritional counseling, and follow-up visits to check on the progress in managing a patient's diet. One-on-one sessions are 15 minutes and Registered Dietitians are reimbursed approximately $29.50 per session ($118 per hour) for private insurance and between $27.80 per session and $39.12 per session for initial counseling paid for by Medicare. Therefore, Boston Heart's coaching sessions are substantially discounted.

18. Unlike the standard one-on-one nutritional counseling, the first session with a Boston Heart dietitian is 50 minutes and the second is 20 minutes, providing a higher value than MNT through Medicare or private insurance.

19. Assuming the Registered Dietitians are getting paid a salary, Defendants lose money by offering free and discounted nutrition counseling services, but this loss is more than made up for by the series of seven tests that are ordered multiple times on behalf of patients, which would cost thousands each time a private insurance patient is tested.

20. Defendant also uses its physician partners, such as Defendant Gunn to refer patients to receive laboratory tests at Boston Heart. Defendant Gunn is a board-certified obstetrician and gynecologist who has his own "Lifestyle Longevity Program" that exclusively promotes Boston Heart's Life Plan and Coaching Program. He has enrolled over 800 patients in the program for two years. Boston Heart identified that 91.1% of his enrolled patients were female and skewed older on

average than all Boston Heart patients in California, which means more of his patients would be have Medicare. Notably, despite his focus on women's health, he has a few male patients enrolled in the program that focused on cardiovascular disease, which is an area of interest rather than his specialty.

21. Defendant has also placed its own dietitians physically within physician offices to meet with patients. Boston Heart RD Karla Guffey was placed in Dr. Narinder Monga's office in Dallas, Texas, and Boston Heart RD Erin Langbein was placed in a physician office in Arkansas.

22. Sales representatives have constant pressure to sell Boston Heart's Life Plan and the tests that are required as this leads to repeat tests and increased commissions. The representatives are encouraged on calls and in meetings to sell the plan to physicians and Boston Heart sends monthly rankings of the sales representatives listing the top sellers of the Life Plan.

23. Once the Lifestyle Program is set in motion, Boston Heart bills Medicare the individual components of its seven tests, rather than using the lipid panel CPT code 80061 for billing. Accordingly, Defendant Boston Heart and healthcare providers, including Defendant Gunn order new tests for the Lifestyle Program participants multiple times for patients instead of ordering the standard lipid panel. Each time they order tests for the Lifestyle Program, Boston Heart and Gunn violate the False Claims Act.

## V. DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY INCENTIVIZING AND BILLING FOR MEDICALLY UNNECESSARY LABORATORY TESTS

24. Defendants violated the False Claims Act by charging Medicare and other federally funded healthcare programs for lab tests that were referred to Defendant Boston Heart by providers because of kickbacks offered to those providers by Defendant. Defendants' practices are unlawful as a kickback scheme, strictly prohibited by Medicare statutes. Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits "Illegal remunerations" for "Whoever knowingly and willfully

offers or pays any remuneration (including any kickback, bribe, or rebate) ***directly or indirectly, overtly or covertly***, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ." 42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

25. Interpretations of this language by the Federal authorities provide useful guidance in applying these anti-kickback laws, and establish that Defendants have violated the anti-kickback laws of the United States through the conduct described herein. For example, the Federal Department of Health and Human Services, Office of the Inspector General ("OIG"), reaffirmed on May 9, 2008, that: "[W]hen a laboratory offers or gives an item or service for free **or less than fair market value to a referral source, an inference arises that the item or service is offered to induce the referral of business.**" OIG Advisory Opinion No. 08-06. An anti-kickback "violation arises if the discount whatever its size is **implicitly or explicitly tied** to referrals of" government-funded business. OIG Opinion Letter, April 26, 2000.

26. Moreover, in June 2005, the OIG issued an Advisory Opinion concluding that payments by a laboratory to referring physicians of $6 per day for "collection of blood samples," likely constituted "prohibited remuneration under the anti-kickback statute." OIG Advisory Opinion No. 05-08, at pp. 1-2.

27. The Life Plan and Registered Dietitian coaching sessions paid by Defendant Boston Heart in this case are no different. As in the "collection" fees paid in the Advisory Opinion's scenario, paying for a Registered Dietitian is "compensation [that] provides an obvious financial benefit to the referring physician, and it may be inferred that this benefit would be in exchange for referrals to the Lab." OIG Advisory Opinion No. 05-08, at p. 4. As in the scenario considered by the OIG's Advisory Opinion, the waiving and discounting payments

for Registered Dietitians provided by Defendants has the effect of incentivizing healthcare providers to order more tests, creating a "risk of overutilization and inappropriate higher costs to the Federal health care programs." *See id.* at p. 4.

28. Defendant violated the anti-kickback laws described in these OIG opinions by waiving and discounting the valuable services of Registered Dietitians and, both implicitly and explicitly, tying these kickbacks to the referral of Medicare business. Accordingly, Defendant violated the Federal anti-kickback provisions. Defendant presented to Medicare claims for reimbursement of laboratory tests the referral of which was induced, in whole or in part, directly or indirectly, overtly or covertly, by the provision of the kickbacks described above. Each of those claims constitutes a violation of the Federal False Claims Act.

29. At all times relevant hereto, Defendants knew that Federal law prohibited its giving or receiving these kickbacks. Defendants certified, both explicitly and implicitly, that each claim they submitted to Medicare would fully comply with all statutes and regulations, including the anti-kickback provisions, and that as Medicare providers, it would comply with all pertinent statutes and regulations, including the anti-kickback provisions.

30. Defendants violated the False Claims Act by submitted claims for payment for laboratory testing services that Defendants knew were not medically necessary. Section 1862 of the Social Security Act provides, in pertinent part: "Notwithstanding any other provision of this title, no payment may be made under [Medicare] for any expenses incurred for items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. 1395y(a)(1)(A).

31. Defendants violated 42 U.S.C. 1395y(a)(1)(A) by ordering medically unnecessary laboratory tests. Defendant Boston Heart's practice of pre-selecting tests and depriving patients and doctors of the option to de-select a test (such as the exclusive Boston Heart Cholesterol Balance® and Boston Heart HDL Map®)

violates established Medicare regulations as all diagnostic tests "must be ordered by the physician who furnishes a consultation or treats a beneficiary for a specific medical problem . . . ." 42 C.F.R. § 410.32(a). And "tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary." *Id.*

32. Medicare and other federal health care programs require as a condition of coverage that services rendered must be reasonable and medically necessary. 42 U.S.C. § 1395y(a)(1)(A). Defendants presented to Medicare claims for reimbursement of laboratory tests which were neither reasonable nor necessary.

33. Each claim for payment submitted by Boston Heart, from at least 2015 to the present, to Medicare that was referred to Defendants by a provider whose patients received the remuneration described above from Defendant Boston Heart constitutes a false claim in violation of the False Claims Act (31 U.S.C. § 3729 *et seq.*). Over this time period, Defendants have submitted hundreds, if not thousands, of such claims for payments, and been reimbursed by the Government as a result of these kickbacks.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**On Behalf of the United States**
**Federal False Claims Act, Presenting False Claims**
**31 U.S.C. § 3729(a)(1)(A)**

34. Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35. Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

36. Defendant knowingly presented false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare program

that were higher than it was permitted to claim or charge by applicable law. Among other things, Defendant knowingly submitted false claims for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

37. Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

38. The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

## SECOND CAUSE OF ACTION

**On Behalf of the United States Federal False Claims Act, Making or Using False Records or Statements Material to Payment or Approval of False Claims**
**31 U.S.C. § 3729(a)(1)(B)**

39. Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 33 of this Complaint as though fully set forth herein.

40. Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

41. Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare program that were higher than it was permitted to claim or charge by applicable law. Among other things, Defendant made and used bills for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

42. Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims

were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

43. The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

## THIRD CAUSE OF ACTION

**On Behalf of the United States Federal False Claims Act, Conspiring to Violate the False Claims Act**

**31 U.S.C. § 3729(a)(1)(C)**

44. Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45. Defendants made agreements and conspired to knowingly present false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare program that were higher than was permitted to claim or charge by applicable law. Among other things, Defendants conspired to knowingly submit false claims for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

46. Defendants made agreements and conspired to knowingly make, use, and cause to be made and use false certifications that their claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

47. The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(C) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

/ / /

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by and through the Relator, prays judgment in its favor and against Defendants as follows:

48. That judgment be entered in favor of plaintiff UNITED STATES OF AMERICA *ex rel.* FBH1, LLC, and against Defendants BOSTON HEART and GORDON C. GUNN, according to proof, as follows:

a. On the First Cause of Action (False Claims Act (31 U.S.C. § 3729(a)(1)(A); Presenting False Claims) damages as provided by 31 U.S.C. § 3729(a)(1), in the amount of:

i. Triple the amount of damages sustained by the Government;

ii. Civil penalties of up to $21,916.00 for each false claim;

iii. Recovery of costs;

iv. Pre- and post-judgment interest;

v. Such other and further relief as the Court deems just and proper;

b. On the Second Cause of Action (False Claims Act (31 U.S.C. § 3729(a)(1)(B)); Making or Using False Records or Statements Material to Payment or Approval of False Claims) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

i. Triple the amount of damages sustained by the Government;

ii. Civil penalties of up to $21,916.00 for each false claim;

iii. Recovery of costs;

iv. Pre- and post-judgment interest;

v. Such other and further relief as the Court deems just and proper;

c. On the Third Cause of Action (False Claims Act (31 U.S.C. § 3729(a)(1)(C)); Conspiring to Violate the False Claims Act) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

i. Triple the amount of damages sustained by the Government;

ii. Civil penalties of up to $21,916.00 for each false claim;

iii. Recovery of costs;

iv. Pre- and post-judgment interest;

v. Such other and further relief as the Court deems just and proper.

2. Further, Relator, on its own behalf, pursuant to 31 U.S.C. section 3730(d), requests that he receive such maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the United States, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. Relator requests that his percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

Dated: October 4, 2017 **COTCHETT, PITRE & McCARTHY LLP**

By: [signature]
NIALL P. McCARTHY
JUSTIN T. BERGER
PHYRA M. McCANDLESS

*Attorneys for Relator*

## VIII. DEMAND FOR JURY TRIAL

Relator FBH1, LLC hereby demands a jury trial on all issues so triable.

Dated: October 4, 2017 **COTCHETT, PITRE & McCARTHY LLP**

By: [signature]
NIALL P. McCARTHY
JUSTIN T. BERGER
PHYRA M. McCANDLESS

*Attorneys for Relator*