1  NIALL P. McCARTHY (SBN 160175)
2  nmccarthy@cpmlegal.com
   JUSTIN T. BERGER (SBN 250346)
3  jberger@cpmlegal.com
4  SARVENAZ J. FAHIMI (SBN 226148)
   sfahimi@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
6  San Francisco Airport Office Center
   840 Malcolm Road
7  Burlingame, CA 94010
8  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
9
10 *Attorneys for Relator*

**FILED**

FEB 0 7 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

# SEALED

11
12              **IN THE UNITED STATES DISTRICT COURT**
13                **EASTERN DISTRICT OF CALIFORNIA**
14

15 **UNITED STATES OF AMERICA** *ex*        CASE NO. 2:17-CV-2061 JAM EFB
   *rel.* **FBH1, LLC; STATE OF**
16 **CALIFORNIA** *ex rel.* **FBH1, LLC,**   **AMENDED COMPLAINT FOR**
                                              **MONEY DAMAGES AND CIVIL**
17              Plaintiffs,                    **PENALTIES FOR:**
18                                              1) **Violations of the Federal False**
                                                   **Claims Act §§ 3729(a)(1)(A),**
19         v.                                      **(a)(1)(B) and (a)(1)(C); and**
20 **BOSTON HEART DIAGNOSTICS**                  2) **Violations of the California**
   **CORPORATION,** a Delaware                    **Frauds Prevention Act, Cal.**
21 corporation, and **GORDON C. GUNN,**           **Ins. Code § 1871.7**
   **M.D.,** an individual,
22
23                                            **DEMAND FOR JURY TRIAL**
              Defendants.
24
25
26        [FILED IN CAMERA AND UNDER SEAL
             PURSUANT TO 31 U.S.C. § 3730(b)(2)]
27
28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**AMENDED COMPLAINT**

File by Fax

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ................................................................................. 1

II.   JURISDICTION AND VENUE ............................................................ 2

III.  PARTIES ............................................................................................. 2

IV.   OVERVIEW OF THE SCHEME ......................................................... 2

      V.    DEFENDANTS VIOLATED THE FALSE CLAIMS ACT
            BY INCENTIVIZING AND BILLING FOR MEDICALLY
      "UNNECESSARY LABORATORY TESTS ........................................ 6

      VI.   DEFENDANTS VIOLATED THE CALIFORNIA FRAUDS
      PREVENTION ACT .............................................................................. 9

VII.  CAUSES OF ACTION ....................................................................... 10

      FIRST CAUSE OF ACTION ............................................................ 10

      SECOND CAUSE OF ACTION ........................................................ 11

      THIRD CAUSE OF ACTION ............................................................ 12

      FOURTH CAUSE OF ACTION ........................................................ 12

VIII. PRAYER FOR RELIEF ..................................................................... 15

IX.   DEMAND FOR JURY TRIAL ........................................................... 18

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**AMENDED COMPLAINT**                                                                 i

1

## **TABLE OF AUTHORITIES**

**Page No(s).**

2

3

Statutes
42 C.F.R. § 410.32(a)....................................................................................................... 8
42 U.S.C. § 1320a-7b(b)(2)(A)......................................................................................... 6
42 U.S.C. 1395y(a)(1)(A)................................................................................................. 8
Cal. Ins. Code § 1871.7(b) ........................................................................................ 9, 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**AMENDED COMPLAINT**

ii

1    Plaintiffs United States of America ("United States"), and the State of

2 California, by and through Relator FBH1, LLC, allege as follows:

3 **I.    INTRODUCTION**

4    1.    Beginning January 1, 2015, Defendant BOSTON HEART

5 DIAGNOSTICS CORPORATION ("Boston Heart") perpetrated a fraud on U.S.

6 taxpayers and private insurance companies through a kickback scheme.  Defendants

7 induce exclusive lab testing in exchange for free and substantially discounted

8 sessions with Registered Dietitians.

9    2.    Defendants promise patients that they can receive enrollment in Boston

10 Heart's Lifestyle Program and valuable coaching sessions with Registered Dietitians

11 after completing a series of nine lab tests.  Healthcare providers, such as Defendant

12 GORDON C. GUNN, M.D. ("Gunn"), are able to attract and retain the business of

13 patients by promising a personalized wellness program and nutritional counseling.

14 In exchange for this benefit, the providers send all of their lipid-related lab testing

15 business, including Medicare business, to Defendant Boston Heart.  As such, the

16 valuable wellness program and discounted Registered Dietitian coaching sessions

17 constitutes illegal remuneration.  Lipid panels and related tests are among the most

18 frequently ordered—and expensive—lab tests.  In engaging in these practices

19 Defendants are encouraging medically unnecessary and excessive testing as well as

20 driving competitors out of the marketplace.

21    3.    This is a *qui tam* action for violation of the Federal False Claims Act

22 (31 U.S.C. §§ 3150 *et seq.*) and the California Frauds Prevention Act (Cal. Ins. Code

23 §§550 *et seq.*) to recover treble damages, civil penalties, and attorneys' fees and

24 costs for Plaintiffs, on behalf of the United States for fraudulent Medicare billings,

25 and on behalf of the State of California for fraudulent billing of insurers.  Non-

26 public information personally known to Relator serves as the basis of this action.

27 / / /

28 / / /

## II.   JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the Federal False Claims Act, and authorize nationwide service of process.

5.     Additionally, this Court has supplemental jurisdiction over the California Frauds Prevention Act claim pursuant to 31 U.S.C. Code § 3732(b), as the claim arises from the same transaction or occurrence as the federal claims.  The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the claim is so related to the FCA claims in the action that they form part of the same case or controversy. Venue is proper in this district pursuant to 31 U.S.C. section 3732(a), as Defendant transacts business in this district.

## III.   PARTIES

6.     The plaintiffs in this action are the UNITED STATES OF AMERICA ("United States") and the STATE OF CALIFORNIA, by and through Relator FBH1, LLC.

7.     Relator FBH1, LLC is a limited liability company whose members are involved in the healthcare industry.

8.     Defendant BOSTON HEART DIAGNOSTICS CORPORATION is a Delaware corporation with its principal place of business in Massachusetts.  Boston Heart is operating the scheme in California.

9.     Defendant GORDON C. GUNN, M.D. is an individual with a private medical practice in Fullerton, California.

## IV.   OVERVIEW OF THE SCHEME

10.     Boston Heart is a medical laboratory that specializes in advanced lipid testing.  Advanced lipid testing helps identify cardiovascular disease risk factors that standard cholesterol and other basic blood tests do not.  Advanced lipid tests tend to

1    be more expensive than more basic medical laboratory tests and, consequently, can

2    result in higher profit margins for the laboratories that provide them.

3        11.    In January 2015, Boston Heart started its Lifestyle Program.  The

4    Boston Heart Lifestyle Program requires a patient to take nine lab tests to be eligible

5    for the Lifestyle Program, which generates a Personalized Nutrition and Life Plan

6    and access to free and substantially discounted to one-on-one coaching sessions with

7    a Registered Dietitian ("RD").

8        12.    The laboratory testing must be done in a certain order and all the tests

9    are required.  They also cannot be older than January 1, 2015 and patients will need

10   to be re-tested to determine whether the Lifestyle Program is effective.  Moreover,

11   two of the tests are exclusively available from Boston Heart.  Therefore, there are

12   many opportunities for Boston Heart's tests to be ordered by healthcare providers

13   that go beyond medical necessity.  The nine lab tests are:

14       •    Boston Heart HDL Map®

15       •    Boston Heart Cholesterol Balance®

16       •    Small Dense LDL Cholesterol (sdLDL-C)

17       •    High Sensitivity C-Reactive Protein (hs-CRP)

18       •    Triglycerides (TG)

19       •    High Density Lipoprotein Cholesterol (HDL-C)

20       •    Direct Low Density Lipoprotein Cholesterol (LDL-C)

21       •    HbA1c

22       •    Insulin

23       13.    The Boston Heart Cholesterol Balance® test has the proprietary

24   marker-Lathosterol and, along with the proprietary Boston Heart HDL Map®, it is

25   one of Boston Heart's most expensive lab tests.

26       14.    Because the purpose of advanced lipid testing is generally to detect,

27   prevent, and manage cardiovascular disease, the patient population that requires the

28

1  testing is largely comprised of senior citizens covered by Medicare although there

2  are also Government funded healthcare programs that pay for testing.

3      15.    According to Boston Heart's website, patients are told:

4         The first step to participating in the Lifestyle Program is to receive your
   Boston Heart Laboratory Report or Lifestyle Program Prescription
5         from your healthcare provider. Next, go to mybostonheart.com and
   click Activate Account. Enter your Patient ID and last name exactly as
6         they appear on your report and then complete your Account Profile.

7  Available at: https://www.mybostonheart.com/pub/FAQs.aspx#3; last visited August

8  9, 2017.

9      16.    Once a patient has taken all nine blood tests and answered a

10  questionnaire, the free Life Plan describing an eating and exercise strategy.  From

11  there, a Registered Dietitian from Boston Heart is available for multiple coaching

12  sessions.  The first two sessions are complimentary and additional sessions are

13  available for purchase as follows: one session for $18, four sessions for $49, or eight

14  sessions for $90.

15      17.    Boston Heart's coaching sessions are quite valuable given that

16  Medicare Part B insurance only covers Registered Dietitians who provide medical

17  nutrition therapy ("MNT") and related services in three circumstances: (1) a patient

18  with diabetes, (2) kidney disease, and/or (3) has had a kidney transplant in the last

19  36 months.  Moreover, people with Medicare Part B must get a referral from their

20  doctor or qualified non-doctor practitioner for the service, but the patient pays

21  nothing if the provider accepts assignment.

22      18.    MNT through Medicare Part B and private insurance typically includes

23  an initial nutrition and lifestyle assessment, one-on-one nutritional counseling, and

24  follow-up visits to check on the progress in managing a patient's diet.  One-on-one

25  sessions are 15 minutes and Registered Dietitians are reimbursed approximately

26  $29.50 per session ($118 per hour) for private insurance and between $27.80 per

27  session and $39.12 per session for initial counseling paid for by Medicare.

28  Therefore, Boston Heart's coaching sessions are substantially discounted.

19. Unlike the standard one-on-one nutritional counseling, the first session with a Boston Heart dietitian is 50 minutes and the second is 20 minutes, providing a higher value than MNT through Medicare or private insurance.

20. Assuming the Registered Dietitians are getting paid a salary, Defendants lose money by offering free and discounted nutrition counseling services, but this loss is more than made up for by the series of nine tests that are ordered multiple times on behalf of patients, which would cost thousands each time a private insurance patient is tested.

21. Defendant also uses its physician partners, such as Defendant Gunn to refer patients to receive laboratory tests at Boston Heart. Defendant Gunn is a board-certified obstetrician and gynecologist who has his own "Lifestyle Longevity Program" that exclusively promotes Boston Heart's Life Plan and Coaching Program. He has enrolled over 800 patients in the program for two years. Boston Heart identified that 91.1% of his enrolled patients were female and skewed older on average than all Boston Heart patients in California, which means more of his patients would have Medicare. Notably, despite his focus on women's health, he has a few male patients enrolled in the program that focused on cardiovascular disease, which is an area of interest rather than his specialty.

22. Defendant has also placed its own dietitians physically within physician offices to meet with patients. Boston Heart RD Karla Guffey was placed in Dr. Narinder Monga's office in Dallas, Texas, and Boston Heart RD Erin Langbein was placed in a physician office in Arkansas.

23. Sales representatives have constant pressure to sell Boston Heart's Life Plan and the tests that are required as this leads to repeat tests and increased commissions. The representatives are encouraged on calls and in meetings to sell the plan to physicians and Boston Heart sends monthly rankings of the sales representatives listing the top sellers of the Life Plan.

**AMENDED COMPLAINT**

24.     Once the Lifestyle Program is set in motion, Boston Heart bills Medicare or private insurers the individual components of its nine tests, rather than using the lipid panel CPT code 80061 for billing.  Accordingly, Defendant Boston Heart and healthcare providers, including Defendant Gunn order new tests for the Lifestyle Program participants multiple times for patients instead of ordering the standard lipid panel.  Each time they order tests for the Lifestyle Program, Boston Heart and Gunn violate the False Claims Act and/or the California Insurance Frauds Prevention Act.

## V.     DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY INCENTIVIZING AND BILLING FOR MEDICALLY UNNECESSARY LABORATORY TESTS

25.     Defendants violated the False Claims Act by charging Medicare and other federally funded healthcare programs for lab tests that were referred to Defendant Boston Heart by providers because of kickbacks offered to those providers by Defendant.  Defendants' practices are unlawful as a kickback scheme, strictly prohibited by Medicare statutes.  Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits "Illegal remunerations" for "Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) *directly or indirectly, overtly or covertly*, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ." 42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

26.     Interpretations of this language by the Federal authorities provide useful guidance in applying these anti-kickback laws, and establish that Defendants have violated the anti-kickback laws of the United States through the conduct described herein.  For example, the Federal Department of Health and Human Services, Office of the Inspector General ("OIG"), reaffirmed on May 9, 2008, that: "[W]hen a

1    laboratory offers or gives an item or service for free **or less than fair market value**
2    **to a referral source, an inference arises that the item or service is offered to**
3    **induce the referral of business**." OIG Advisory Opinion No. 08-06.  An anti-
4    kickback "violation arises if the discount whatever its size is **implicitly or explicitly**
5    **tied** to referrals of" government-funded business.  OIG Opinion Letter, April 26,
6    2000.

7        27.    Moreover, in June 2005, the OIG issued an Advisory Opinion
8    concluding that payments by a laboratory to referring physicians of $6 per day for
9    "collection of blood samples," likely constituted "prohibited remuneration under the
10   anti-kickback statute."  OIG Advisory Opinion No. 05-08, at pp. 1-2.

11       28.    The Life Plan and Registered Dietitian coaching sessions paid by
12   Defendant Boston Heart in this case are no different.  As in the "collection" fees
13   paid in the Advisory Opinion's scenario, paying for a Registered Dietitian is
14   "compensation [that] provides an obvious financial benefit to the referring
15   physician, and it may be inferred that this benefit would be in exchange for referrals
16   to the Lab."  OIG Advisory Opinion No. 05-08, at p. 4.  As in the scenario
17   considered by the OIG's Advisory Opinion, the waiving and discounting payments
18   for Registered Dietitians provided by Defendants has the effect of incentivizing
19   healthcare providers to order more tests, creating a "risk of overutilization and
20   inappropriate higher costs to the Federal health care programs." *See id.* at p. 4.

21       29.    Defendant violated the anti-kickback laws described in these OIG
22   opinions by waiving and discounting the valuable services of Registered Dietitians
23   and, both implicitly and explicitly, tying these kickbacks to the referral of Medicare
24   business.  Accordingly, Defendant violated the Federal anti-kickback provisions.
25   Defendant presented to Medicare claims for reimbursement of laboratory tests the
26   referral of which was induced, in whole or in part, directly or indirectly, overtly or
27   covertly, by the provision of the kickbacks described above.  Each of those claims
28   constitutes a violation of the Federal False Claims Act.

1    30.   At all times relevant hereto, Defendants knew that Federal law

2 prohibited its giving or receiving these kickbacks.  Defendants certified, both

3 explicitly and implicitly, that each claim they submitted to Medicare would fully

4 comply with all statutes and regulations, including the anti-kickback provisions, and

5 that as Medicare providers, it would comply with all pertinent statutes and

6 regulations, including the anti-kickback provisions.

7    31.   Defendants violated the False Claims Act by submitted claims for

8 payment for laboratory testing services that Defendants knew were not medically

9 necessary.  Section 1862 of the Social Security Act provides, in pertinent part:

10 "Notwithstanding any other provision of this title, no payment may be made under

11 [Medicare] for any expenses incurred for items or services . . . which . . . are not

12 reasonable and necessary for the diagnosis or treatment of illness or injury or to

13 improve the functioning of a malformed body member."  42 U.S.C. 1395y(a)(1)(A).

14    32.   Defendants violated 42 U.S.C. 1395y(a)(1)(A) by ordering medically

15 unnecessary laboratory tests.  Defendant Boston Heart's practice of pre-selecting

16 tests and depriving patients and doctors of the option to de-select a test (such as the

17 exclusive Boston Heart Cholesterol Balance® and Boston Heart HDL Map®)

18 violates established Medicare regulations as all diagnostic tests "must be ordered by

19 the physician who furnishes a consultation or treats a beneficiary for a specific

20 medical problem . . . ."  42 C.F.R. § 410.32(a).  And "tests not ordered by the

21 physician who is treating the beneficiary are not reasonable and necessary." *Id.*

22    33.   Medicare and other federal health care programs require as a condition

23 of coverage that services rendered must be reasonable and medically necessary.  42

24 U.S.C. § 1395y(a)(1)(A).  Defendants presented to Medicare claims for

25 reimbursement of laboratory tests which were neither reasonable nor necessary.

26    34.   Each claim for payment submitted by Boston Heart, from at least 2015

27 to the present, to Medicare that was referred to Defendants by a provider whose

28 patients received the remuneration described above from Defendant Boston Heart

**AMENDED COMPLAINT**                                                                          8

1  constitutes a false claim in violation of the False Claims Act (31 U.S.C. § 3729 *et*

2  *seq.*).  Over this time period, Defendants have submitted hundreds, if not thousands,

3  of such claims for payments, and been reimbursed by the Government as a result of

4  these kickbacks.

5  **VI.   DEFENDANTS VIOLATED THE CALIFORNIA FRAUDS**

6  **PREVENTION ACT**

7      35.   The California Insurance Frauds Prevention Act ("CIFPA") provides

8  that any person or entity who knowingly submits, or causes the submission of, a

9  false or fraudulent claim to a private insurer in California for payment or approval is

10  liable for a civil penalty of up to $10,000 for each such claim, plus three times the

11  amount of the damages sustained by the insurer. Cal. Ins. Code § 1871.7(b). The

12  Court may also grant equitable relief to protect the public.

13      36.   The CIFPA empowers and encourages any interested person to bring a

14  civil action under Ins. Code § 1871.7 against those who submit, or cause to be

15  submitted, false or fraudulent claims against insurers.

16      37.   Relator alleges that since at least 2015 Defendants have violated the

17  CIFPA by "knowingly" submitting false claims to private insurers in California.  As

18  with the Medicare claims described above, Defendants violated the CIFPA by

19  charging insurers for lab tests that were referred to Boston Heart by providers

20  because of kickbacks.  These private claims were also tainted and amount to false

21  claims.

22      38.   Based on the foregoing laws, Relator seeks, though this action, to

23  recover damages and civil penalties arising from the false or fraudulent records,

24  statements and/or claims that Defendants knowingly made or caused to be made in

25  connection with their fraudulent scheme.

26  ///

27  ///

28  ///

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**AMENDED COMPLAINT**                                                                 9

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**On Behalf of the United States**
**Federal False Claims Act, Presenting False Claims**
**31 U.S.C. § 3729(a)(1)(A)**

39.   Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 38 of this Amended Complaint as though fully set forth herein.

40.   Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

41.   Defendants knowingly presented false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare program that were higher than it was permitted to claim or charge by applicable law. Among other things, Defendants knowingly submitted false claims for Medicare business that were obtained by means of, and as a result of, illegal kickbacks.

42.   Defendants knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

43.   The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

/ / /

/ / /

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION
### On Behalf of the United States Federal False Claims Act, Making or Using False Records or Statements Material to Payment or Approval of False Claims
### 31 U.S.C. § 3729(a)(1)(B)

44.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 43 of this Amended Complaint as though fully set forth herein.

45.     Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

46.     Defendants knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare program that were higher than permitted to claim or charge by applicable law.  Among other things, Defendants made and used bills for Medicare business that were obtained by means of, and as a result of, illegal kickbacks.

47.     Defendants knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

48.     The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

///
///
///
///
///

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**AMENDED COMPLAINT**

11

1
2
3

**THIRD CAUSE OF ACTION**
**On Behalf of the United States Federal False Claims Act, Conspiring**
**to Violate the False Claims Act**
**31 U.S.C. § 3729(a)(1)(C)**

4    49.    Plaintiffs incorporate by reference and reallege all of the allegations
5  contained in paragraphs 1 through 48 of this Amended Complaint as though fully set
6  forth herein.

7    50.    Defendants made agreements and conspired to knowingly present false
8  records and statements, including but not limited to bills, invoices, requests for
9  reimbursement, and records of services, in order to obtain payment or approval of
10  charges by the Medicare program that were higher than permitted to claim or charge
11  by applicable law.  Among other things, Defendants conspired to knowingly submit
12  false claims for Medicare business that were obtained by means of, and as a result
13  of, illegal kickbacks.

14    51.    Defendants made agreements and conspired to knowingly make, use,
15  and cause to be made and use false certifications that their claims, and all documents
16  and data upon which those claims were based, were accurate, and were supplied in
17  full compliance with all applicable statutes and regulations.

18    52.    The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(C) and was
19  a substantial factor in causing the United States to sustain damages in an amount
20  according to proof.

21
22
23
24

**FOURTH CAUSE OF ACTION**
**On Behalf of the State of California**
**California Frauds Prevention Act**
**Cal. Ins. Code § 1871.7 *et seq.* and Cal. Pen. Code § 550 *et seq.***
**(Cal Ins. Code 1871.7; Cal. Pen. Code 550 (a)(5))**

25    53.    Plaintiffs incorporate by reference and reallege all of the allegations
26  contained in paragraphs 1 through 52 of this Amended Complaint as though fully set
27  forth herein.

28  / / /

54.   This is a claim for treble damages and penalties under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7 et seq., as amended ("the Act"). The Act provides for civil recoveries against persons who violate the provisions of the Act or the provisions of California Penal Code sections 549 or 550, including recovery of up to three times the amount of any fraudulent insurance claims, and fines of between $5,000 and $10,000 for each claim. Cal. Ins. Code § 1871.7(b).

55.   Subsection (e) of Cal. Ins. Code § 1871.7 provides for a qui tam civil action in order to create incentives for private individuals who are aware of fraud against insurers to help disclose and prosecute the fraud. Cal. Ins. Code § 1871.7(e).

56.   Subsection (b) of Cal. Ins. Code § 1871.7 provides for civil recoveries against persons who violate the provisions of Penal Code sections 549 or 550. Section 550 of the Penal Code prohibits the following activities, among others:

> (a) It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:
>
> ******
>
> (5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.
>
> (6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.
>
> *****

(b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

Cal. Penal Code § 550.

57.   By virtue of the acts described in this Amended Complaint, Defendants knowingly presented, or caused to be presented, false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment from insurers, in violation of Penal Code § 550(a) and Cal. Ins. Code § 1871.7(b).  The claims were false or fraudulent because, among other things:

•   Defendants knowingly sought, and falsely represented that they were entitled to reimbursement in excess of amounts owed;

LAW OFFICES COTCHETT, PITRE & McCARTHY, LLP

1          •       Defendants knowingly sought and falsely represented that they

2          were entitled to reimbursement for services not actually performed; and

3          •       Defendants knowingly sought, and falsely represented that they

4          were entitled to reimbursement for treatment that did not meet the

5          required conditions set out by insurers for reimbursement.

6       58.     Defendants either directly presented such false claims for payment to

7   insurers, or caused such false claims to be presented.

8       59.     This conduct was a substantial factor in causing damages as detailed

9   herein.

10      60.     The California State Government is entitled to receive three times the

11  amount of each claim for compensation submitted in violation of Cal. Ins. Code §

12  1871.7.  Additionally, the California State Government is entitled to the maximum

13  penalty of $10,000 for each and every violation alleged herein.

14  **VIII.  <u>PRAYER FOR RELIEF</u>**

15      WHEREFORE, Plaintiffs, by and through Relator, prays judgment in their

16  favor and against Defendants as follows:

17      1.      That judgment be entered in favor of THE UNITED STATES OF

18  AMERICA *ex rel.* FBH1, LLC, and against Defendants BOSTON HEART and

19  GORDON C. GUNN, according to proof, as follows:

20          a.      On the First Cause of Action (False Claims Act (31 U.S.C. §

21          3729(a)(1)(A); Presenting False Claims) damages as provided by 31

22          U.S.C. § 3729(a)(1), in the amount of:

23                  i.      Triple the amount of damages sustained by the

24                          Government;

25                  ii.     Civil penalties of up to $21,916.00 for each false claim;

26                  iii.    Recovery of costs;

27                  iv.     Pre- and post-judgment interest;

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**AMENDED COMPLAINT**                                                    15

1          v.     Such other and further relief as the Court deems just and

2               proper;

3      b.     On the Second Cause of Action (False Claims Act (31 U.S.C. §

4       3729(a)(1)(B)); Making or Using False Records or Statements Material

5       to Payment or Approval of False Claims) damages as provided by 31

6       U.S.C. § 3729(a)(1) in the amount of:

7          i.     Triple the amount of damages sustained by the

8               Government;

9          ii.     Civil penalties of up to $21,916.00 for each false claim;

10          iii.     Recovery of costs;

11          iv.     Pre- and post-judgment interest;

12          v.     Such other and further relief as the Court deems just and

13               proper;

14      c.     On the Third Cause of Action (False Claims Act (31 U.S.C. §

15       3729(a)(1)(C)); Conspiring to Violate the False Claims Act) damages as

16       provided by 31 U.S.C. § 3729(a)(1) in the amount of:

17          i.     Triple the amount of damages sustained by the

18               Government;

19          ii.     Civil penalties of up to $21,916.00 for each false claim;

20          iii.     Recovery of costs;

21          iv.     Pre- and post-judgment interest;

22          v.     Such other and further relief as the Court deems just and

23               proper.

24    2.     That judgment be entered in favor of the PEOPLE OF THE STATE OF

25   CALIFORNIA, and against Defendants BOSTON HEART and GORDON C.

26   GUNN, according to proof, as follows:

27      a.     On the Fourth Cause of Action (California Frauds Prevention

28   Act (Cal. Ins. Code § 1871.7)):

i.   For the maximum allowable civil penalties to be imposed
for each and every false and fraudulent claim for payment
submitted, presented or caused to be submitted or
presented to an insurance company;

ii.   For an assessment of three times the amount of each claim
for compensation made by Defendants

iii.  For pre-and post-judgment interest;

iv.   For reasonable attorneys' fees, costs and expenses incurred
in bringing this case;

v.    For an award of such other and further relief as the Court
deems just and proper.

3.   Further, Relator, on its own behalf, pursuant to 31 U.S.C. section
3730(d), requests that it receive such maximum amount as permitted by law, of the
proceeds of this action or settlement of this action collected by the United States,
plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and
costs of this action. Relator requests that the percentage be based upon the total
value recovered, including any amounts received from individuals or entities not
parties to this action.

4.   Relator, on its own behalf, pursuant to California Insurance Code
Section 1871.7 requests that it receive the maximum percentage of any recovery
allowed.


Dated: February 7, 2019            **COTCHETT, PITRE & McCARTHY LLP**

                                   By:  _____
                                        NIALL P. McCARTHY
                                        JUSTIN T. BERGER
                                        SARVENAZ J. FAHIMI
                                        *Attorneys for Relator*

1   **IX.   DEMAND FOR JURY TRIAL**

2     Relator FBH1, LLC hereby demands a jury trial on all issues so triable.

3

4   Dated: February 7, 2019   **COTCHETT, PITRE & McCARTHY LLP**

5

6             By:

7               NIALL P. McCARTHY
            JUSTIN T. BERGER

8               SARVENAZ J. FAHIMI

9               *Attorneys for Relator*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

&#9737;
LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**AMENDED COMPLAINT**                      18

1

## PROOF OF SERVICE

2       I am employed in the County of San Mateo.  I am over the age of 18 years and
3   not a party to this action.  My business address is the Law Offices of Cotchett, Pitre
    & McCarthy, LLP, San Francisco Airport Office Center, 840 Malcolm Road,
    Burlingame, California, 94010. On this day, I served the following document(s) in
4   the manner described below:

5       **1.**     **AMENDED COMPLAINT**

6   ✓   **VIA MAIL:** I am readily familiar with this firm's practice for causing
    documents to be served by first class mail.  Following that practice, I caused
7       the sealed envelope containing the aforementioned document(s) to be
    delivered via first class mail to the addressee(s) specified below.

8

9   ✓   **VIA HAND DELIVERY:** I am readily familiar with this firm's practice for
    causing documents to be served by hand delivery.  Following that practice, I
10      caused the sealed envelope containing the aforementioned document(s) to be
    hand delivered to the addressee(s) specified below.

11

## [SEE ATTACHED SERVICE LIST]

12

13      I declare under penalty of perjury, under the laws of the State of California,
    that the foregoing is true and correct.  Executed at Burlingame, California, on
14  February 7, 2019.

15

16                                     CINDY BARBOSA

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PROOF OF SERVICE**

## SERVICE LIST

| | |
|---|---|
| **VIA MAIL**<br>McGregor W. Scott<br>United States Attorney<br>Catherine J. Swann<br>Assistant United States Attorney<br>501 I Street, Suite 10-100<br>Sacramento, CA 95814 | **COUNSEL FOR THE UNITED STATES OF AMERICA** |
| **VIA MAIL**<br>Michael D. Granston<br>Jake M. Shields<br>Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 261<br>Washington, D.C. 20044 | **COUNSEL FOR THE UNITED STATES OF AMERICA** |
| **VIA HAND DELIVERY**<br>Agent for Service of Process<br>California Department of Insurance<br>Government Law Bureau<br>300 Capital Mall, Suite 1700<br>Sacramento, CA 95184 | **CALIFORNIA DEPARTMENT OF INSURANCE** |
| **VIA MAIL**<br>Anne Marie Schubert<br>Sacramento District Attorney's Office<br>901 G Street<br>Sacramento, CA 95814 | **SACRAMENTO DISTRICT ATTORNEY** |

**PROOF OF SERVICE**